UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| v. | : | Cr. No. 05-171 (JR) |
| JOHN J. TERRELL. | : | |

SUPPLEMENTAL MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO SUPPRESS TANGIBLE EVIDENCE

Mr. John J. Terrell, the defendant, through undersigned counsel, respectfully submits the following as additional support for his motion to suppress tangible evidence.

Factual Background

Mr. Terrell is charged in a one count indictment with unlawful possession of a firearm and ammunition by a person convicted of a crime punishable by a term of imprisonment exceeding one year. The charge arose out of an incident that occurred on April 28, 2005.

On July 14, 2005, Mr. Terrell, through counsel, filed a motion to suppress the tangible evidence recovered on April 28th, because it was the fruit of violations of Mr. Terrell's Fourth Amendment rights. On September 15, 2005, the Court held an evidentiary hearing on the motion. At the hearing, the government called one witness, Matthew Dailey, who is an officer with the Metropolitan Police Department (hereinafter "MPD"). Tr. 5.[1]

Officer Dailey testified that on the afternoon of April 28th, he was riding in an unmarked police car driven by an agent of the Bureau of Alcohol Tobacco and Firearms. Tr. 6, 12, 15. Officer Dailey was in the back seat with his MPD partner, Officer Chumbley, and a second ATF

---

[1]All transcript references are to the transcript of the motions hearing held before this Court on September 15, 2005.

agent was riding in the front seat. Tr. 6, 15. The MPD officers were in uniform, and the ATF agents were wearing raid vests with "ATF" on the front and the back. Tr. 12-13.

While traveling in a southwest direction, in the 2300 block of Southern Avenue, Officer Dailey noticed a Chevy Impala also traveling in a southwest direction, on Southern Avenue. Tr. 6, 13-14. According to Officer Dailey, the Impala was traveling at a high rate of speed. Tr. 6, 13. Officer Dailey could see that there were two individuals in the car, the driver and the front seat passenger. Tr. 16. The officers checked the tag number on the Impala with the police dispatcher and learned that the car was not stolen. Tr. 6. However, after seeing the Impala almost collide with a Metro bus, the officers directed the car to pull over. Tr. 7.

The driver of the Impala pulled to the side of the road as soon as the officers signaled with their emergency lights and parked in a legal parking space. Tr. 16, 17. The police car pulled directly behind the Impala, and Officer Dailey and the other officers all got out of the police car and approached the Impala. Tr. 17. As the officers walked toward the Impala, Officer Dailey saw the driver of the Impala lean over toward the area where the passenger was, "kind of underneath the dash area," and then sit back up in his seat. Tr. 7-8. Officer Dailey could see the driver's arm only from the shoulder down to the elbow. Tr. 19.

Officer Dailey went to the front passenger door of the Impala, and Officer Chumbley went to the driver's door. Tr. 17. Officer Dailey did not speak to the passenger, but listened as Officer Chumbley spoke to the driver, Mr. Terrell. Tr. 21.

Officer Chumbley asked Mr. Terrell for his driver's license and information. Tr. 8. Mr. Terrell leaned toward the glove compartment area, and then leaned back and said, "I don't have it on me." Tr. 8. Officer Chumbley asked Mr. Terrell to turn his car off, and Mr. Terrell told him

that the car was already off.  Tr. 22-23.  Officer Chumbley also asked Mr. Terrell for his name, date of birth, and Social Security number, and asked in what state his license was valid.  Tr. 8.  Mr. Terrell told him, "Virginia," and Officer Chumbley stepped away from the Impala to run the information through the dispatcher.  Tr. 8.  After the dispatcher radioed that Mr. Terrell's license was suspended, Officer Chumbley asked Mr. Terrell to step out of the car, searched him and placed him under arrest for driving without a permit.  Tr. 8, 25.  Mr. Terrell was handcuffed and seated on the curb near the rear of the Impala.  Tr. 25.

At the same time as Officer Chumbley had Mr. Terrell step out of the car, Officer Dailey had the passenger, who was a juvenile, step out of the car.  Tr. 11, 24.  The juvenile was not handcuffed, but also was asked to sit on the curb near the rear of the Impala.  Tr. 25.  Because the juvenile did not have a driver's license, there was no circumstance under which he would have been permitted to leave the scene with the Impala.  Tr. 37.  After the officers determined that there was no outstanding warrant for him, he was permitted to walk away from the scene.  Tr. 11-12.

After arresting Mr. Terrell, the officers conducted a search of the Impala.  Tr. 8, 28.  Officer Dailey did not search the Impala himself, but watched as the ATF agents conducted the search.  Tr. 28.  Officer Dailey confirmed that the agents were looking for weapons, not evidence, because Mr. Terrell was arrested only for driving without a permit.  Tr. 35.  The ATF agents removed the car key from the ignition.  Tr. 28.  This was the only key found, and the agents used it to unlock the locked glove compartment.  Tr. 28.  Inside the glove compartment, the agents found a loaded gun.  Tr. 8.

Argument

In United States v. Belton, 453 U.S. 454 (1981), the United States Supreme Court set forth a bright line rule for police officers to follow: after arresting an occupant of a car, the police may search the entire passenger compartment of the car, including the glove compartment, but not including the trunk. 452 U.S. at 460 and n.4. The Court in Belton, however, did not authorize the search of a locked glove compartment, and the justifications that support the bright line rule in Belton do not support extending the rule to include a locked glove compartment, under the circumstances of this case.

The Court's decision in Belton was based on the need to protect officers and evidence and was an extension of the Court's decision in Chimel v. California, 395 U.S. 752 (1969). In Chimel, the Court held "that a lawful custodial arrest creates a situation which justifies the contemporaneous search without a warrant of the person arrested and of the immediately surrounding area." Belton, 453 U.S. at 457. As the Court in Belton noted, "[s]uch searches have long been considered valid because of the need 'to remove any weapons that [the arrestee] might seek to use in order to resist arrest or effect his escape' and the need to prevent the concealment or destruction of evidence." Id. (quoting Chimel, 395 U.S. at 763).

Both in Chimel and again in Belton, the Court reiterated its adherence to the principle that the scope of any "'search must be "strictly tied to and justified by" the circumstances which rendered its initiation permissible.'" Belton, 453 U.S. at 457 (quoting Chimel, 395 U.S. at 762 (quoting Terry v. Ohio, 392 U.S. 1, 19 (1968)). Thus, searches incident to a valid arrest must be limited to the area into which an arrestee might reach to grab a weapon or evidence. In Belton, the Court concluded that the entire passenger compartment of a car, including the glove

compartment, was within this area.  The Court, however, noted that its holding "in no way alters the fundamental principles established in the Chimel case regarding the basic scope of searches incident to lawful custodial arrests."  Belton, 453 U.S. at 460 n.3.  Such searches must be limited to the areas within the arrestee's immediate control, "construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence."  Chimel, 395 U.S. at 763.  The Court in Belton did not address the issue of locked glove compartments.  Locked glove compartments, particularly under the circumstances here, are not within an arrestee's immediate control.

Here, as Officer Dailey testified, there was no concern for evidence because Mr. Terrell was arrested only for driving without a permit, and the officers were not searching for evidence.  Tr. 35; cf. Knowles v. Iowa, 525 U.S. 113, 118 (1998) (need to search for evidence not present when officer stopped defendant for speeding and issued traffic citation).  Thus, the need to protect evidence from possible destruction cannot justify the search of the locked glove compartment.

The only issue was the safety of the officers and the need to remove any weapons within Mr. Terrell's reach.  The locked glove compartment was not within Mr. Terrell's reach.  The search of the locked glove compartment was conducted after Mr. Terrell had been searched, and he had no key on his person.  At the time the locked glove compartment was searched, the only key to the glove compartment was in the possession of the ATF agents.  Mr. Terrell had no more ability to access the locked glove compartment than he did to access the trunk – the search of which was clearly prohibited under Belton.  See Belton, 453 U.S. 461 n. 4; see also United States v. Jackson, 415 F.3d 88, 91 (D.C. Cir. 2005).

The Seventh, Eighth and Tenth Circuits have permitted searches of locked glove compartments when there was reasonable articulable suspicion to believe that a weapon may be present. See United States v. Palmer, 360 F.3d 1243 (10th Cir. 2004); United States v. Holifield, 956 F.2d 665 (7th Cir. 1992); United States v. Brown, 913 F.2d 570 (8th Cir. 1990). The facts of those cases, however, are distinguishable from the undisputed facts at issue here.

In Palmer, a police officer saw the defendant speeding and directed him to pull his car over, but rather than stopping the defendant accelerated and continued through a traffic light, across a lane of traffic and into a parking lot, passing 25 empty parking spaces before coming to a stop. Palmer, 360 F.3d at 1245. During this time, the officer saw the defendant reaching behind the seat and then back toward the glove box. Id. The defendant continued to make movements toward his feet and toward the glove box as the officer approached the defendant's car. Id. The officer then saw that the glove box was opened and saw the defendant close the box. Id. As the officer was writing a speeding citation for the defendant, a driver of a pickup truck approached the officer and told him that he had seen the defendant trying to hid something after the officer signaled him to stop. Id. While waiting for backup, the officer ran a record check of the defendant and learned that the defendant was "an ex-convict" and that he had been "armed and dangerous." Id. The officer continued to see the defendant moving back and forth and leaning toward the glove compartment and under his seat. Id. The Tenth Circuit upheld the officer's subsequent search of the locked glove box, finding that the officer had a reasonable suspicion based on specific and articulable facts that the driver might have been dangerous and may have gained immediate control of a weapon. Id. at 1246. The court found that because the defendant was not under arrest and would have been permitted to reenter the car, it was necessary for the

officer's safety to check the locked glove compartment – otherwise, the officers would have been in danger as the defendant left the scene of the traffic stop. Id. 1247.

Similarly, in Holifield, the Seventh Circuit upheld the search of a locked glove compartment where the aggressive and threatening behavior of the driver justified the officers' fear for their safety, and the driver and passengers would have been permitted to return to the car, following the traffic stop, while the officer prepared the citation. Holifield, 956 F.2d at 668-69. In Brown, the Eighth Circuit also upheld the search of a locked glove compartment where the police had a reasonable articulable suspicion that the driver was armed and dangerous, because the police officers had just observed the driver involved in a what the officers believed was a drug deal and had seen the driver retrieve what the officer believe to be drugs from the glove compartment. Brown, 956 F.2d at 571-72. The Eighth Circuit also emphasized that the driver would have been permitted to return to his car following the Terry stop and would have had full access to the glove compartment. Id. at 572.

Unlike in Palmer, Holifield, and Brown, the officer here had no reasonable articulable suspicion to believe that there was a weapon in Mr. Terrell's car or that Mr. Terrell was armed – there was no evidence whatsoever to suggest that a weapon was present. The purpose of the search incident to arrest was merely to ensure that Mr. Terrell did not have access to any weapons. Mr. Terrell was under arrest. Neither he, nor the passenger, who did not have a driver's license, was going to be permitted to reenter the car. Mr. Terrell had been fully searched incident to his arrest. He had no key to the glove box and the only key was in the possession of the ATF agent.

Only the Seventh Circuit has sanctioned the search of a locked glove compartment incident to an arrest, but again, as in Holifield, the court relied on the fact that at the time of the search – although the driver was under arrest and not returning to the car – the police officers had not yet determined whether they would release the car to one of the passengers. Woody, 55 F.3d 1257. Here, the undisputed facts are that the officer, prior to the search, had Mr. Terrell in handcuffs and under arrest, and the officers had determined that the juvenile passenger did not have a driver's license and would not be permitted to return to the car. Tr. 37.

This Circuit has recently warned against the further extension of searches incident to a valid arrest to areas beyond those authorized in Belton. See Jackson v. United States, 415 F.3d 88, 97 (D.C. Cir. 2005) (warning against permitting trunk searches after the arrest of a car's occupant, where officers have not gathered enough evidence for probable cause as inconsistent with the rationale for the passenger-compartment exception set forth in Belton). The Court's decision in Belton was based on the Court's finding in Chimel that searches of the areas within the immediate access of an arrestee are reasonable. The search of the locked glove compartment under the circumstances of this case was not reasonable because Mr. Terrell was under arrest for driving without a permit, and the locked glove compartment was not within Mr. Terrell's immediate access because he had been thoroughly searched incident to his arrest, the ATF agent had possession of the only key and neither he nor the passenger were going to be permitted to return to the car. Under these circumstances, the search cannot be justified as necessary to ensure the safety of the officers or the prevention of the destruction of evidence.

<u>Conclusion</u>

For the foregoing reasons, the Court should suppress the tangible evidence recovered from the locked glove compartment of the Impala.

Respectfully submitted,

/s/

_____
Mary Manning Petras
Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Suite 550
Washington, D.C.  20004
(202) 208-7500   ext. 109