UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Criminal No.: 05-171 (JR) |
| : | |
| JOHN TERRELL, : | |
| : | |
| Defendant. : | |

### GOVERNMENT'S SUPPLEMENTAL OPPOSITION TO
### DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

The United States, by and through its attorney, Kenneth L. Wainstein, the United States Attorney for the District of Columbia, hereby submits the following information as addition support for its opposition to the defendant's motion to suppress evidence.

Facts

The factual basis for this motion was presented at the hearing held by the Court on September 15, 2005. Officer Matthew Dailey of the Metropolitan Police Department (hereinafter MPD) testified on behalf of the government. In summary, he testified that on April 28, 2005, the defendant was stopped by the police in the area of the 800 block of Chesapeake Street, SE, Washington, DC, for driving erratically. When the officers approached defendant's vehicle, they could see that he leaned over toward the passenger side, kind of underneath the dash area, and then sat back in his seat, however they could not see his hands while he made these motions.[1] When asked for his

---

[1] While not specifically stated at the hearing, the glove compartment in this vehicle was in the dash area on the passenger side of the car. For purposes of this motion, the government would ask the Court to take judicial notice of the fact that the term "glove compartment" refers to the compartment area in a vehicle in the passenger side dash area. Alternatively, the government would ask leave of the Court to adduce testimony from the officer that the glove compartment in this vehicle was in that location.

license and registration, the defendant leaned toward the glove compartment area, then leaned back and stated that he did not have the information on him. During the subsequent interview by the officers, it was discovered that the defendant did not have a valid driver's license. Consequently, he was arrested for driving with no permit. There was a juvenile in the car, who was not arrested, but permitted to walk away from the scene. A search incident to the defendant's arrest revealed a loaded gun in the locked glove compartment as well as repair paperwork with the defendant's name. Recovered from a gym bag in the back seat of the vehicle was a child gun safety lock and a prescription medicine bottle with the defendant's name on the label. At the conclusion of the hearing, the Court recognized that the interior of a vehicle was subject to search incident to arrest, however, the Court expressed reservation with regard to the legality of such a search in this situation, noting that the glove compartment of the vehicle was locked, the defendant was outside of the vehicle during its search, and that the nature of the offense for which the defendant was arrested – driving without a permit - made it unlikely that evidence of that crime might be found inside the glove compartment. The Court invited the parties to submit memoranda regarding the legality of the search of the locked glove compartment.[2]

Argument

Here, the fact that the defendant was in fact driving without a license has not been contested. Since that is an arrestable offense in the District of Columbia, the validity of the defendant's arrest does not appear to be in dispute. United States v. Belton, 453 U.S. 454 (1981) made it clear that the

---

[2] The government will assume, for the purposes of this memorandum, that the Court did not extend its invitation to the issue of the legality of the search of the gym bag, however, in the event that the government's assumption is mistaken, the arguments posited here to support the search of the locked glove compartment would apply with equal force to support the search of the gym bag.

interior of a motor vehicle could be searched incident to a valid arrest. The Belton Court noted its desire to create a clear rule that could be easily applied and predictably enforced, noting the advisability of providing police officers with a single standard to guide them in their duties. See id at 458-59, (citations omitted). The Court also noted that any container inside the passenger compartment of the vehicle was also subject to search under this rule–regardless of whether the container were open or closed, noting that "the lawful custodial arrest justifies the infringement of any privacy interest the arrestee may have." See id at 460-61. The Court specifically approved the search of glove compartments under this rule, again, regardless of whether they were open or closed. See id at 460, footnote 4. That the Court's ruling did not exclude locked areas from its ruling is also illustrated by the dissent of Justices White and Marshall, who state that "[t]he Court now holds that as incident to the arrest of the driver or any other person in an automobile, the interior of the car and any container found therein, **whether locked or not**, may not only be seized but also searched even absent probable cause to believe that contraband or evidence of a crime will be found." Id at 472 (emphasis not in original).

Further support for the proposition that Belton's ruling encompassed locked glove compartments is found in the facts of Belton itself. There, the defendant was stopped by police for speeding. During their interview, police smelled burnt marihuana in the car, and noticed an envelope suspected of containing marihuana inside the car. The occupants of the car were arrested for possession of marihuana. Search incident to arrest revealed the presence of cocaine inside a jacket found in the back seat of the car. However, the cocaine was not merely in the pocket of that jacket–the pocket of the jacket was zipped, and had to be unzipped in order for the cocaine to be discovered. At the time that the car was searched and the cocaine recovered, all of its occupants had

been removed from the car, and positioned in an area away from the vehicle and away from each other. See id at 455-56. The same logic that permits the search of a zippered pocket would also permit the search of a locked glove compartment. In other words, despite the fact that the area searched was sealed in some way, its search was permissible because the area is within the immediate control of the arrestee. The Belton Court noted that the lower courts were having trouble finding a workable definition of the area within the arrestee's immediate control in the context of automobile searches. Consequently, Belton noted that its ruling was that the area within the "relatively narrow compass of the passenger compartment of an automobile [is] in fact generally, **even if not inevitably**, within the area into which an arrestee might reach in order to grab a weapon or evidentiary ite[m.] Id at 460, (citations omitted),( emphasis added). It seems clear from this language that the Belton Court appreciated the fact that a particular person might not necessarily have the flexibility or dexterity required to actually be able to access each and every area or container, whether open or closed, that is found inside a vehicle. Further, it also seems clear that the Court was unwilling to go into such vagaries as whether a person who has long arms could reach different areas than a person who has shorter arms or other matters of that sort. Consequently, an analysis of the actual accessibility or ease of accessibility of an area or container inside a vehicle must give way to a bright line rule that as long as the area or container is found inside the vehicle, it is subject to search incident to a valid arrest.[3]

---

[3] Without this rule, the Court would have to involve itself in such analyses as whether a locked glove compartment, which may take 45 seconds to unlock and access, would have been more or less accessible to an occupant than a pill bottle having a child safety cap which has rolled under a back seat or into a crevice. Clearly, the pill bottle may take longer to access, and be further away from the occupant, however it does not appear that anyone would claim that such a bottle is not subject to search incident to a valid arrest of the vehicle's occupant.

Belton also does not require that the area or container to be searched be contingent upon or relevant to the offense for which the occupant is under arrest. In fact, Belton specifically permits vehicle searches that are incident to a lawful arrest, regardless of the offense in question. "The authority to search . . . incident to a lawful custodial arrest . . . does not depend on what a court may later decide was the probability **in a particular arrest situation** that weapons or evidence would in fact be found upon the person of the suspect. . . . . [A] search incident to . . . arrest requires no additional justification. See id at 461 (emphasis added). Consequently, the fact that the case at bar involves an arrest for driving with no permit does not prohibit the officers from searching for weapons or anything else, as long as the search was incident to a valid arrest.

The government is aware of no case wherein a search of a glove compartment incident to a valid arrest was rejected merely because the glove box was locked and the occupants were not inside the vehicle at the time of the search. In fact, the case law is to the contrary. See, e.g., United States v. Woody, 55 F.3d 1257 (7th Cir, 1995), upholding the legality of a search of a locked glove box even though the search occurred while the defendant was handcuffed inside of a police vehicle.[4]

---

[4] The cases cited in defendant's supplemental memorandum permitting searches of locked glove boxes–US v. Palmer, 360 F.2d 1243 (10th Cir. 2004); US v. Holifield, 956 F.2d 665 (7th Cir. 1992); and US v. Brown, 913 F.2d 570 (8th Cir, 1990) involve searches based on reasonable suspicion of contraband. Consequently, while they are certainly indicative of judicial support for reasonable weapons searches, they are not necessarily illustrative in the case at bar, which involves the legality of vehicular searches incident to arrest. Alternatively, the evidence here would certainly encompass an argument that the legality of the search in this situation could be based on articulable suspicion that the defendant was armed, since he was seen making motions toward the passenger side dash area as the police approached his vehicle. However, this would not be the government's primary argument regarding the legality of the search in this case.

WHEREFORE, for these reasons and any other reasons as may appear to the Court, the government requests that Motion to Suppress Physical Evidence be denied.

Respectfully submitted,

KENNETH L. WAINSTEIN.
UNITED STATES ATTORNEY

By: _____
 WANDA J. DIXON
Assistant United States Attorney
Organized Crime and Narcotics Trafficking Section
555 Fourth Street, N.W., Room 4235
Washington, D.C. 20530
202/514-6997